Bell, J.
The questions involved herein are of tremendous significance to every law enforcement agency in the state and for many years have plagued every individual officer who has made an arrest upon the order of his superior officer or at the request of another police agency. With the advance in transportation made in the past few decades and the resultant ease with which criminals may move from one jurisdiction to another has come an added hardship to law enforcement agencies in protecting society from those who would thus escape apprehension. Fortunately, concurrently with the increase of the speed with *351 which criminals may escape, have come advancements in the development of methods of communication which in a measure minimize the advantage of the escapee. The telephone, radio and teletype are potent devices in the hands of law enforcement agencies, and without them modern law enforcement would be seriously handicapped. Yet their very use often raises serious questions in the mind of the police officer.
To what extent may a police officer in one community rely on the statements and requests of an officer in another community concerning the arrest of a person sought by the latter? What are his responsibilities toward a person arrested in compliance with such request? What are his liabilities in the event the wrong person is arrested? All these questions are inherent in the factual situation presented herein.
Section 109-14, General Code (Section 2963.12, Revised Code), a part of the Uniform Extradition Act passed by the General Assembly in 1937, reads as follows:
“The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant.”
The power to arrest granted in the first clause of this section has a correlative duty which is set out in the second clause. This power and duty are substantially the same as those set forth in Sections 13432-2 and 13432-3, General Code (Sections 2935.04 *352 and 2935.05, Revised Code), which have long been the law of Ohio.
Section 13432-2, General Code, reads as follows:
“When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained.”
Section 13432-3, General Code, reads:
“When a peace officer has arrested a person without a warrant, he must without unnecessary delay, take the person arrested before a court or magistrate having jurisdiction of the offense, and must make or cause to be made before such court or magistrate a complaint stating the offense for which the person was arrested.”
Since pre-Revolution days, the right of freedom from unlawful arrest and seizure of the person has been zealously guarded for our people. And well it should be. Yet that right must not be so enforced as to prevent those to whom we have entrusted the guarding of our safety from protecting us from the felon who would make of our communities havens of refuge. And we believe that in making an arrest without a warrant at the request of another police agency all reasonable doubts concerning the reasonableness of the information on which the arresting officer acts should be resolved in his favor.
■ In this case the request for investigation was made by a recognized police agency of a sister state. The original request identified the plaintiff by address and by name, except for a variance in the initial of the middle name. Plaintiff had recently come to Ohio from Pennsylvania. Following a report on that investigation, the Pennsylvania police requested the ar *353 rest. Although there was some variance as to the physical description of the plaintiff, the variance was not so great as to make the actions of the defendants unreasonable.
We believe, and therefore hold, that under the facts of this case the defendants were entitled to an instruction, as a matter of law, that they acted upon reasonable information and in so doing were not subject to liability for false arrest and imprisonment.
A different question arises, however, in regard to the actions of the defendants following the plaintiff’s arrest. Did they take the plaintiff before a judge or magistrate with all practicable speed and make complaint against him?
Following the arrest of plaintiff at his home, he was taken to the police station, arriving there at 3 p. m. A complaint and warrant were filed the next day at 9 a. m. It is contended by defendants and was found by the Court of Appeals that as a matter of law they acted with “all practicable speed” because it was impossible to get a prosecuting officer to authorize the complaint or a judge to fix bail between 3 p. m. and 9 a. m. Certainly, this is a matter upon which reasonable minds well might differ.
Although it has not often been the subject of judicial interpretation, it does seem to be settled that if one seeks to escape liability for either false arrest or false imprisonment he has the burden of proving the justification for his actions. See Reinhard v. City, 49 Ohio St., 257, 31 N. E., 35; 18 Ohio Jurisprudence, 1023, Section 42; 10 Ruling Case Law, 901, paragraph 52.
Whether the defendants herein acted with “all practicable speed” in filing a complaint and warrant against the plaintiff was a question of fact for the jury.
*354 The judgment of the Court of Appeals is, therefore, reversed and the cause remanded to the Court of Common Pleas for a retrial in accordance with this opinion.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Taft, JJ., concur.